David Hilton Wise, Esq.
Nevada Bar No. 11014
WISE LAW FIRM, PLC
421 Court Street
Reno, Nevada, 89501
Telephone: (775) 329-1766
Facsimile: (775) 329-2432
dwise@wiselaw.pro
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MICHELLE KARAJELIAN, TRACI ELLIS, MINDY CHARUSARN on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>   v.<br><br>AFFINITY LIFESTYLES.COM, INC., d/b/a REAL WATER<br>3773 Howard Hughes Pkwy<br>Suite 500S<br>Las Vegas, Nevada, 89169<br><br>  <u>Serve Registered Agent</u>:<br>  InCorp Service, Inc.<br>  3773 Howard Hughes Pkwy<br>  Suite 500S<br>  Las Vegas, Nevada, 89169<br><br><br>    *Defendant*. | Case No.<br><br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**Demand for Jury Trial** |

   Plaintiffs Michelle Karajelian, Traci Ellis, Mindy Charusarn ("Plaintiffs"), acting on

behalf of themselves and all others similarly situated ("Class Members" or the "Class"), bring

this action for damages and/or equitable relief against Affinity Lifestyles.com, Inc., d/b/a Real

Water ("Defendant"). Plaintiffs' allegations are based upon personal knowledge as to

themselves and their own actions, and upon information and belief as to all other matters.

## NATURE OF THE CASE

1.     This is a civil class action brought by Plaintiffs on behalf of consumers who purchased Defendant's "Real Water" brand alkaline water (the "Product") for personal use.

2.     Defendant formulates, manufactures, advertises, and sells the Product to consumers throughout the United States.

3.     Unbeknown to Plaintiffs and members of the Classes (defined below) at the time of their purchase, and contrary to the express and implied representations made by Defendant in respect to the Product, the Product is defective, is deceptively advertised, and causes undesired side effects to consumers, including, but not limited to, liver failure, hospitalization, fever, vomiting, nausea, loss of appetite, and fatigue, which, if known to Plaintiffs and members of the Classes, would have caused Plaintiffs and members of the Classes not to purchase or use the Product.[1]

4.     As a result, Plaintiffs and Class Members have been, and continue to be harmed, by having purchased the Product under false pretenses, and paying for the Product while receiving something worthless in return.

5.     Plaintiffs and the Classes thus bring claims for negligence, violation of consumer protection statutes, and unjust enrichment seeking equitable relief and/or money damages, and reasonable attorneys' fees.

## PARTIES

6.     Plaintiff Michelle Karajelian, is a citizen of California, residing in Fountain Valley, Orange County. Plaintiff Karajelian purchased and used the Product in California. As a result of

---

[1] https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-acute-non-viral-hepatitis-illnesses-real-water-brand-alkaline-water-march-2021 (last visited March 19, 2021).

CLASS ACTION COMPLAINT
*Karajelian v. Affinity Lifestyles.com, Inc.*

using the Product Plaintiff Karajelian suffered nausea.

7.     Plaintiff Traci Ellis is a citizen of California, residing in Fresno, Fresno County. Plaintiff Ellis purchased and used the Product in California. As a result of using the Product Plaintiff Ellis suffered nausea and blood in her urine.

8.     Plaintiff Mindy Charusarn is a citizen of California, residing in Mission Hills, Santa Barbara County. Plaintiff Charusarn purchased and used the Product in California.

9.     Defendant Affinitylifestyles.com, Inc. is incorporated in Nevada with its principal place of business at 3773 Howard Hughes Pkwy, STE 500S, Las Vegas, Nevada, 89169.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from each of the Defendant.

11.     The Defendant has sufficient minimum contacts with Nevada to be subject to this Court's personal jurisdiction. Defendant intentionally avails itself of the markets within Nevada through the promotion, sale, marketing, and distribution of the Products and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

12.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS

13.     Defendant bottles water and sells it across the Southwest United States-including

Nevada, Utah, Arizona, New Mexico, and the Los Angeles area. Defendant sells the Product in major retail chains and many other stores, including at Sprouts, Whole Foods, and Costco.[2]

14.    The Product comes in a variety of sizes and is available in ready to drink bottles. Customers can choose between 500mL, 750mL, 1 liter, and 1.5-liter bottles. A 1-gallon bottle option is in the works. Aside from the ready to drink option, Real Water also comes in a 5 gallon bottle for home deliveries.

15.    Defendant touts itself as "a premium drinking water with 9.0 pH" that "can help your body to restore balance and reach your full potential."[3]

16.    Defendant touts that its water provides key benefits including that it supposedly deactivates pepsin, an enzyme that causes acid reflux, benefits people who have high blood pressure, diabetes, and high cholesterol, and enables blood to flow more efficiently and increasing oxygen delivery throughout the body.[4]

17.    Defendant claims to add electrons to the water via a process known as "electrical restricting".[5]

18.    Defendant represents that the Product technologically improves on, and is superior to,  normal drinking water. In a YouTube video on Defendant's website, it makes numerous claims about the innovative technology within the Product. It states that normal tap water creates "free radicals" that cause damage throughout the body and cause damage and serious health conditions:[6]

---

[2]    https://www.washingtonpost.com/health/warning-issued-not-to-drink-vegas-based-real-water-product/2021/03/17/b7fbd294-876b-11eb-be4a-24b89f616f2c_story.html (last visited March 18, 2021).
[3]    https://drinkrealwater.com/about-us/ (last visited March 18, 2021).
[4]    https://made.vegas/real-alkalized-water-las-vegas/ (last visited March 18, 2021).
[5]    *Id.* (last visited March 18, 2021).
[6]    https://youtu.be/aVBN8v4e5cg (last visited March 18, 2021).



19.    Defendant claims that the Product prevents these "free radicals" from building up in the body and using valuable electrolytes because of the electrons that are created within the body as a result of ingesting the Product.[7]



[7] *Id.*



20.    Defendant directs the aforementioned representations and promises about the health benefits of the Product to consumers, like Plaintiffs and Class Members, and Defendant intended that Plaintiff and Class Members read and rely on these health representations in purchasing the Product.

21.    In addition, each bottle of the Product represents that Real Water goes "beyond alkalinity" and contains water "infused with negative ions." These representations conveyed to Plaintiffs and all other reasonable consumers the notion that the product is healthy or, at the least, that it is suitable for human consumption. Each of the Plaintiffs read and relied on such representations, which appear on all bottles of the Products.

22.    Nowhere in Defendant's advertisements, marketing or labeling of the Products does it disclose that the Product causes liver failure, hospitalization, fever, vomiting, nausea, loss of appetite, and/or fatigue

23.    Plaintiffs would not have purchased the product, or would have paid much less for it, if they knew that they were undertaking a risk to their health by consuming it.



---

8 https://drinkrealwater.com/product/real-water-16-9oz-bottles-case-of-24/ (last visited March 21, 2021).
9 https://www.pinterest.com/pin/141511613265057702/  (last visited March 21, 2021).

24.     As reported in the Washington Post, Defendant has touted the Product as the healthiest drinking water available, which provides specific advertised benefits, as alleged above.[10]

25.     However, Defendant's Real Water is not the healthiest drinking water available. In fact, it is far from it.

26.     Contrary to the aforementioned representations and promises made in respect to the Product by Defendant, the Product was defective and caused undesired side effects to consumers, including, but not limited to, fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and loss of appetite.

27.     Defendant's Product does not help one reach their full potential. In fact, Defendant's product has caused liver damage to children due to non-viral hepatitis.[11]

28.     In November 2020, a 2-year-old was transported to the hospital for liver malfunction. There, it became apparent at the hospital that multiple children have had similar ailments. The only common link between the group was drinking the Defendant's Product.[12]

29.     ALT, which stands for alanine transaminase, is an enzyme found mostly in the liver. When liver cells are damaged, they release ALT into the bloodstream. An ALT test measures the amount of ALT in the blood. High levels of ALT in the blood can indicate a liver problem. The normal value for ALT in blood ranges from 29 to 33 units per liter (IU/L) for males and 19 to 25

---

[10]   https://www.washingtonpost.com/health/warning-issued-not-to-drink-vegas-based-real-water-product/2021/03/17/b7fbd294-876b-11eb-be4a-24b89f616f2c_story.html (last visited March 19, 2021).

[11]       https://www.8newsnow.com/news/local-news/fda-issues-warning-about-las-vegas-water-company-after-numerous-people-suffer-liver-damage-local-family-sues/ (last visited March 19, 2021).

[12]       https://www.8newsnow.com/news/local-news/fda-issues-warning-about-las-vegas-water-company-after-numerous-people-suffer-liver-damage-local-family-sues/  (last visited March 19, 2021).

IU/L for females. However, the 2-year-old's ALT was measured at over 5,000, and, as a result thereof, he was informed that he was a candidate for an immediate liver transplant.[13]

30.    Despite these episodes, Defendant continued selling the Product.

31.    In March 2021, an FDA investigation started in connection with the Southern Nevada Health District that sought to determine the cause of the injuries suffered by the children as a result of drinking the Product.

> On March 13, the FDA was alerted to five cases of acute non-viral hepatitis (resulting in acute liver failure) in infants and children that occurred in November 2020 with an unknown cause reported to the Southern Nevada Health District. All five patients had been hospitalized but have since recovered. All patients were reported to have consumed "Real Water" brand alkaline water. These patients came from four different households. Five additional people, two adults and three children, from two of the four households were reported to have experienced other symptoms as well. Less severe symptoms included fever, vomiting, nausea, loss of appetite, and fatigue. **The consumption of "Real Water" brand alkaline water is the only common link identified among all of these cases to date.**[14]

(emphasis supplied).

32.    The FDA investigation confirmed the children suffered from non-viral hepatitis that resulted in acute liver failure and the only common link among all the cases was the consumption of Defendant's Product.

33.    As a result of the FDA's preliminary investigation, it recommended "[c]onsumers, restaurants, and retailers should not drink, cook with, sell, or serve "Real Water" alkaline water, until more information is known about the cause of the illnesses. Symptoms of all types of hepatitis, including non-viral hepatitis, are similar and can include fever, fatigue, loss of appetite,

---

[13] *Id.*

[14] https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-acute-non-viral-hepatitis-illnesses-real-water-brand-alkaline-water-march-2021 (last visited March 19, 2021).

nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, and jaundice. Those experiencing these symptoms should contact their doctor."[15]

34.    On March 17, 2021, nearly 5 months from the first episode suffered as a result of drinking the Product, the President of the company who manufactures the Product ordered for all retailers, restaurants, and any other business to stop selling the Product "throughout the United States until the issue is resolved."[16]

35.    On its homepage, Defendant on March 16, 2021, told consumers to return their unused bottles to retailers, without offering a full (or any) refund of their purchase price, or otherwise hinting at a process by which consumers can receive compensation for purchasing a product deemed too dangerous to leave in the stream of commerce. The website stated the following:

- Real Water was notified on March 16, 2021, of a potential problem with our water dating back to November 2020. We are saddened to hear of the potential health issue of the product from our Real Water Las Vegas Home Delivery operation.

- We, at Real Water, take the safety of our products and concern for our customer's health seriously. Real Water takes great strides in every way to make sure our product is safe for consumption. Our goal is to diligently work with the FDA to achieve a swift resolution.

- While the potential problem arose in Las Vegas, we are taking proactive steps to stop selling and distributing Real Water products throughout the United States until

---

[15] *Id.*

[16] https://www.washingtonpost.com/health/warning-issued-not-to-drink-vegas-based-real-water-product/2021/03/17/b7fbd294-876b-11eb-be4a-24b89f616f2c_story.html (last visited March 19, 2021).

the issue is resolved.

- Real Water is asking that all retailers pull the product from the shelf, effective immediately, and hold it in the back rooms or return it to the distributors.

- Any customer who has purchased Real Water from a retailer is asked to return the product. For more information, we urge you to call 702-310-5437 or email us at customerservice@drinkrealwater.com

36.    Defendant failed to disclose to consumers on the label and packaging of the Product and/or in the Product's marketing materials that health injuries could result from simply drinking the Product, despite having knowledge for months (since November 2020) of the harmful effects of the Product.

37.    On information and belief, the Product's defective nature arose out of Defendant's failure to, among other things, perform sufficient product testing, and quality control to ensure the Product was safe for consumer use, as expressly and/or impliedly advertised by Defendant.

38.    Because Defendant decided to cut corners in the formulating, manufacturing and/or testing of the Product, consumers, including Plaintiffs, have suffered injuries, and paid for a product they would not have bought, or would have paid materially less, if they knew the truth that was omitted by Defendant.

39.    Although Defendant publicly acknowledged the Product was defective and dangerous, Plaintiffs and Class Members still remained uncompensated for purchasing a worthless product.  Nor has Defendant addressed any personal injuries caused by the Product.

40.     Because of Defendant's omissions, false promises and deceptive and misleading advertising practices, consumers were deceptively induced to purchase the Product.  The only

conceivable purpose for falsely and deceptively making these claims about the Product, and failing to disclose the serious hazard it posed, is to stimulate sales and enhance Defendant's profits.

41.    As a result, consumers, including Plaintiffs, purchased and paid valuable consideration for a Product that is worthless.   Indeed, Defendant surely understands that no reasonable consumer would purchase the Product if it were accurately labeled and/or marketed as presenting health risks.

42.    Plaintiffs are in the same Class as all other consumers who purchased Defendant's Product during the relevant time period.  Plaintiffs and the Class Members were in fact misled by Defendant's omissions and/or misrepresentations in respect to the Product.  Plaintiffs and Class Members would have purchased other bottled water, if any at all, if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product by Defendant.

## CLASS ACTION ALLEGATIONS

### Class Definitions

43.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

> **Nationwide Class:** All persons in the United States who, during the maximum period permitted by the law, purchased the Product for personal, family, or household use.

44.    Plaintiffs Michelle Karajelian, Traci Ellis, Matthew Daniel, Mindy Charusarn bring this action on behalf of themselves and the members of the following Subclass:

> **California Subclass:** All persons in California who, during the maximum period permitted by the law, purchased the Product for personal, family, or household use.

45.    Specifically excluded from these definitions are (1) any and all persons who purchased the Products directly from Defendant; (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and

successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

46.    As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiffs.

47.    Plaintiffs seek only damages and/or equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

48.    Numerosity: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable and likely in the thousands. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

49.    Typicality: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Products that were manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that contained a significantly lesser amount of hemp extract than advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant engaged in a uniform, systematic course of conduct, and/or a uniform failure to act and/or convey complete and truthful information , and defendants' wrongdoing has injured all Class Members.

50.    Commonality: Plaintiffs have numerous questions of law and fact common to themselves and Class Members that predominate over any individualized questions. These common legal and factual issues include:

a. Whether the Product is defective such that they cause health problems including fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption;

b. Whether and when Defendant had exclusive knowledge that the Product is defective but failed to disclose the defect to the public;

c. Whether the Product disclosed the side effects of the Product as described herein;

d. Whether Defendant's conduct violated the applicable state consumer claims alleged herein;

e. Whether Defendant's acts and omissions make it liable to Plaintiff and Class Members for negligence and strict products liability;

f. Whether Defendant engaged in unfair, deceptive, unlawful and/or wrongful acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class and Subclass members;

g. Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

h. Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

i. Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class and Subclass have suffered an ascertainable loss of monies and/or property and/or value; and

j. Whether Plaintiffs and Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

51.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

52.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating

-14-

their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

53.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**COUNT 1**
**UNJUST ENRICHMENT**

54.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs as if fully included herein.

55.     Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

56.     Defendant has knowledge of such benefits.

57.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiffs and the Class Members without adequately compensating Plaintiffs and the Class Members therefore. Defendant failed to adequately compensate the Plaintiffs for the benefits conferred by providing the Products without those products having the characteristics and benefits promised.

58.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products increased health benefits; (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption.

59.    This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect in Defendant's Products that causes fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption.

60.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT 2**
**NEGLIGENCE – FAILURE TO WARN**

61.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs as if fully included herein.

62.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiffs and the Class.

63.     At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption.

64.     At all times the risk of substantial health risks were known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and formulation, as described herein.

65.     Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiffs and the Class of all dangers associated with the intended use.

66.     After receiving multiple complaints of fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in these side effects as a result of using the Products.

67.     Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

68.     Defendant knew, or by the exercise of reasonable care, should have known of the inherent design and/or manufacturing defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

69.     As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption, Plaintiffs and the Class have suffered damages as set forth herein.

**COUNT 3**
**NEGLIGENCE – FAILURE TO TEST**

70.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs as if fully included herein.

71.     Defendant did not perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiffs and the Class.

72.     Adequate testing would have revealed the serious deficiencies in the Products in that it would have revealed the fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite occasioned by use of the Products.

73.     Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—the Products before introducing them into the stream of commerce.

74.     Defendant breached these duties by failing to exercise ordinary care in the design and testing of the Products, which it introduced into the stream of commerce, because Defendant knew or should have known the Products could cause fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption.

75.     Defendant knew or reasonably should have known that Class members such as Plaintiffs would suffer economic damages or injury and/or be at an increased risk of suffering damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

76.     By reason of the foregoing, Plaintiffs and the Class experienced and/or are at risk of experiencing financial damage and injury.

77.     As a direct and proximate result of Defendant's failure to test the Products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by the Defendant, Plaintiffs and the Class have suffered damages as described above.

## COUNT 4
### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
**Cal. Civ. Code §§ 1750 *et seq.***

78.     The Plaintiffs, individually and on behalf of the California Subclass, incorporate by reference all previous paragraphs of this Complaint as if fully stated herein.

79.     This claim is for equitable relief only and does not assert money damages. Plaintiffs reserve the right to amend the complaint in the future to plead money damages.

80.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

81.     Defendant is a "person" as defined by Cal. Civ. Code §§ 1761(c) & 1770 and has sold Products which are "goods" as defined by Cal. Civ. Code §§ 1761(a) & 1770.

82.    Plaintiffs and California Subclass members are "consumers" as defined by Cal. Civ. Code §§ 1761(d) & 1770 and have engaged in a "transaction" as defined by Cal. Civ. Code §§ 1761(e) & 1770.

83.    Defendant's unlawful conduct resulted in the sales of products and services to Plaintiffs and the California Subclass Members in violation of Cal. Civ. Code § 1770, including:

    a.    Representing that goods or services have characteristics that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade when they were not;

    c.    Advertising goods or services with intent not to sell them as advertised; and

    d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

84.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

85.    Had Defendant disclosed to Plaintiffs and California Subclass Members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products were healthy and gave various health benefits, without disclosing their potential risks and dangers of consumption. Plaintiffs and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

86.     As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiffs and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage caused by the use of Defendant's Products.

87.     Plaintiffs sent notice of their intention to seek damages via a letter dated March 21, 2021, in compliance with Cal. Civ. Code § 1782(a). Any further notice would be futile because Defendant has yet to offer relief to the California Subclass, despite being on notice of its unfair, and deceptive conduct.

88.     Plaintiffs, individually and on behalf of the other California Subclass Members, seek all equitable relief, including a refund and restitution and an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

## COUNT 5
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

89.     Plaintiffs, individually and on behalf of the California Subclass, incorporate by reference all previous paragraphs of this Complaint as if fully stated herein.

90.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

91.     Defendant violated Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

92.     Defendant's "unfair" acts and practices include:

    a.   Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not

receive the benefit of their bargain;

b.  Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.  Making affirmative public representations about alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.  Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

93.    Defendant engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780 *et seq.*, and California common law.

94.    Defendant's deceptive acts and practices include:

a.  Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.  Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.  Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.  Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

95.    Defendant violated UCL § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products. As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically their failure to inform customers of the health and safety risks inherent in Defendant's Products, violated Cal. Civ. Code §§ 1750 *et seq.*, common law, and other statutory violations as alleged herein. Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products pose health and safety risks, Defendant has not provided any remedial efforts including changing the label of the Products that discloses their possible risks, and Defendant's conduct is ongoing and continues to this date.

96.    Defendant violated UCL § 17200's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Defendant's Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risk of fever, fatigue, loss of appetite, nausea, vomiting, abdominal pain, dark urine, clay or gray-colored bowel movements, joint pain, yellow eyes, jaundice, liver failure, hospitalization, and/or loss of appetite after consumption) - thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the

conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

97.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiffs and California Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

98.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, California Subclass Members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

99.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

100.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

CLASS ACTION COMPLAINT
*Karajelian v. Affinity Lifestyles.com, Inc.*

101.    Defendant recklessly disregarded Plaintiffs and California Subclass members' rights. Defendant's knowledge of the Defendant's Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

102.    Plaintiffs and California Subclass Members seek injunctive and declaratory relief, any other appropriate equitable relief, and an award of reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

## COUNT 6
## <u>VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW</u>
### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

103.    Plaintiffs, individually and on behalf of the California Subclass, incorporate by reference all previous paragraphs of this Complaint as if fully stated herein.

104.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Subclass Members and the public. As described, Defendant misrepresented Defendant's Products, concealed Defendant's Products' defects, concealed the health and safety risk with use of Defendant's Products, and also concealed and misrepresented the true nature of Defendant's Products.

105.    By their actions, Defendant disseminated uniform advertising regarding the Defendant's Products throughout the country, including in California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500 *et seq.* Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

106.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose the true nature of Defendant's Products. Defendant failed to instigate a public information campaign to

alert consumers of the defects and, instead, continued to misrepresent the true nature of Defendant's Products, continuing to deceive consumers.

107.    Defendant continued to misrepresent to consumers that Defendant's Products were capable of certain benefits without disclosing health and safety risks. Had Defendant disclosed those issues, rather than falsely advertising Defendant's Products' abilities, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

108.    In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of California law. Plaintiffs and other California Subclass Members based their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant, attributable to Products sold in those false and misleading advertisements, amount to hundreds of millions of dollars. Plaintiffs and California Subclass Members were injured in fact and lost money and property as a result.

109.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code §§ 17500 *et seq.*

110.    As a result of Defendant's wrongful conduct, Plaintiffs and the California Subclass Members lost money. Plaintiffs and the California Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

111.    Plaintiffs and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; injunctive and declaratory relief; reasonable

attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

**COUNT 7**
**VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(Nev. Rev. Stat. §41.600, §598.0915 and §598.0923, *et seq.*)**

112.    Plaintiffs, individually and on behalf of the Nationwide class, incorporate by reference all previous paragraphs of this Complaint as if fully stated herein.

113.    The Defendant's actions and/or inactions with respect to the sale, promotion, and management of the Product represent a violation of Nevada's Deceptive Trade Practices Act ("DTPA").

114.    Defendant knowingly made false representations and/or material omissions regarding the characteristics, quality, and benefits of the Product while actively promoting and selling Product to Plaintiffs and Nationwide Class Members throughout Nevada and the United States.

115.    Defendant perpetuated violations of Nevada's DTPA by knowingly and purposely concealing information about the Product making false health claims and significant defects that result in health and safety risks.

116.    Defendant's deceptive acts and practices included the dissemination of material information through television, print, and internet that failed to disclose known health risks and significant defects with the Product.

117.    Defendant engaged in deceptive trade practices in the course of its business as defined in Nev. Rev. Stat. §598.0915, including but not limited to subsections (2), (5), (7), and (15), in that Defendant:

    a.   Knowingly made a false representation as to the source, sponsorship, approval or certification of the Product;

    b.   Knowingly made a false representation as to the characteristics, uses, and benefits of the Product;

    c.   Represented that the Product was of a particular standard, quality or grade; and

    d.   Knowingly made other false representation in its transactions involving the Product with the Plaintiffs and the Nationwide Class.

118.    Defendant further engaged in deceptive trade practices in the course of its business as defined in Nev. Rev. Stat. §598.0923, including but not limited to subsection (2) in that Defendant knowingly failed to disclose a material fact in connection with the sale of the Product.

119.    The totality of Defendant's deceptive practices and acts are a direct and proximate cause of economic harm against the Plaintiffs and similarly situated Nationwide Class Members.

120.    Pursuant to Nev. Rev. Stat. §41.600(3), Plaintiffs and other similarly situated Nationwide Class Members are entitled all damages sustained, any equitable relief that the Court deems appropriate, and all costs and reasonable attorney's fees as a result of Defendant's violations of Nevada's DTPA.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiffs, individually and on behalf of a class of all others similarly situated, seeks a judgment against Defendant, as follows:

    a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil

Procedure and naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

b.      For an order declaring that Defendant's conduct violates the statutes and common law referenced herein;

c.      For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pleaded or as the Court may deem proper; and

h.      For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

DATED: March 22, 2021             Respectfully Submitted,


/s/ David Hilton Wise
David Hilton Wise, Esq.
Nevada Bar No. 11014
John J. Drudi, Esq.*
WISE LAW FIRM, PLC
421 Court Street
Reno, Nevada, 89501
Telephone: (775) 329-1766
Facsimile: (775) 329-2432
dwise@wiselaw.pro
jdrudi@wiselaw.pro
*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT
*Karajelian v. Affinity Lifestyles.com, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daniel K. Bryson, Esq.*
J. Hunter Bryson, Esq.*
900 W. Morgan Street
Raleigh, NC, 27603
Tel: (919) 600-5000
Tel: (919) 539-2708
dan@whitfieldbryson.com
hunter@whitfieldbryson.com
*Counsel for Plaintiffs*

Gary M. Klinger, Esq.*
MASON LIETZ & KLINGER LLP
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com
*Counsel for Plaintiffs*

*Applications for pro hac vice to follow*

CLASS ACTION COMPLAINT
*Karajelian v. Affinity Lifestyles.com, Inc.*